**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>Sharon Kay Driggers,<br><br>                Debtor. | Case No. 20-03239-dd<br>Chapter 13 |
| Susan Jacille Marks,<br><br>                Debtor. | Case No. 20-03240-dd<br>Chapter 7 |

**ORDER**

This matter is before the Court on a motion filed by the United States trustee ("UST") on October 22, 2020.[1] The motion seeks the Court's review of the conduct of Richard Tallini ("Tallini"), Sam Babbs, III ("Babbs"), and Babbs Law Firm, P.L. ("Babbs Law"), cancellation of the retention agreements between the debtors and Babbs Law, return of all funds paid by the debtors, and any other appropriate relief, including monetary sanctions (the "Motion"). Tallini, Babbs, and Babbs Law filed an objection to the UST's Motion on November 26, 2020. The Court held a hearing on the Motion on April 21, 2021. Prior to the hearing, the parties submitted a joint stipulation to numerous facts. At the hearing, the UST introduced a large number of documents, which were admitted into evidence without objection. At the conclusion of the hearing, the UST and Tallini advised the Court that the matter had been resolved as between them. The UST, Babbs, and Babbs Law requested that the Court give them a period of time to

---

[1] The United States trustee filed a motion in each of the above-captioned cases. For purposes of this order, the Court will address both motions together and will refer to the motion singularly. This order is filed in each case.

1

attempt to resolve the matter; however, they were unable to reach a settlement. The Court now issues this Order.

## BACKGROUND AND FACTS

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding. 28 U.S.C. § 157(b)(2)(A). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The UST's Motion regarding Tallini was settled, and Consent Orders Resolving the Motion as to Tallini were entered in both the Driggers and Marks cases on May 14, 2021. The relief requested in the Motion regarding Babbs and Babbs Law is addressed herein.

### The Driggers Case

On November 15, 2019, Ms. Driggers signed a retention agreement with Babbs Law. *See* UST Ex. 4. Ms. Driggers then paid Babbs Law $3,700 on November 16, 2019. Joint Statement at ¶ 13. On December 4, 2019, Tallini and Babbs Law entered into a Counsel Agreement with one another. *See* UST Ex. 1. At the time Babbs Law entered into a retention agreement with Ms. Driggers it did not have an attorney associated with it who was admitted to practice before this Court.

After retaining Babbs Law, Ms. Driggers spoke with several non-attorney representatives of Babbs Law in connection with her bankruptcy case, often providing her with legal advice.[2] On November 18, 2019, a non-attorney representative of Babbs Law told Ms. Driggers that her husband's income and expenses would have to be included in financial calculations in the bankruptcy. *See* UST Ex. 17; Babbs Ex. A, p. 34. On December 2, 2019, a non-attorney

---

[2] It appears that some or all of these "non-attorney" representatives are actually employees of Themis Law, PLLC ("Themis Law"). Babbs stated on the record at the hearing that Themis Law is a law firm in which he is a partner. He also stated that while Themis Law does foreclosure defense, it also offers support services to other law firms, including Babbs Law.

2

representative of Babbs Law told Ms. Driggers that a bankruptcy filing would stop foreclosure. *See* UST Ex. 17; Babbs Ex. A, p. 32.  On January 15, 2020, a non-attorney representative of Babbs Law told Ms. Driggers that her husband would be protected by the co-debtor stay.  *See* UST Ex. 17; Babbs Ex. A, p. 30.  On February 4, 2020, a non-attorney representative of Babbs Law told Ms. Driggers that the bankruptcy would remove the foreclosure status on her home insurance.  *See* UST Ex. 17; Babbs Ex. A, p. 15. On April 17, 2020, Ms. Driggers called with questions about a notice she received in the pending foreclosure action against her property. A non-attorney representative of Babbs Law told Ms. Driggers that due to COVID-19, the foreclosure was on hold.  *See* UST Ex. 17; Babbs Ex. A, p. 26.

Ms. Driggers also spoke with non-attorney representatives of Babbs Law on other occasions regarding the preparation of the documents required for her bankruptcy case and about the status of filing her case.  Ms. Driggers was often given conflicting information.  Significant delays in the commencing of her bankruptcy case occurred.  On December 13, 2019, Kayla Brooks, a non-attorney, told Ms. Driggers that Babbs Law had received everything it needed and would begin preparing her bankruptcy petition.  Joint Statement at ¶ 51.  On December 18, 2019, Georgia Myers, a non-attorney, told Ms. Driggers that her case should be filed the next week.  Joint Statement at ¶ 52.  On December 26, 2019, Kayla Brooks told Ms. Driggers her full petition was prepared and was being sent to in-house counsel[3] to review.  Joint Statement at ¶ 54. On February 3, 2020, Georgia Myers told Ms. Driggers that her bankruptcy filing was provided to local counsel and was in edit with the attorney.  Joint Statement ¶ 56.  On April 29, 2020,

---

[3] The only in-house counsel identified at the hearing was one Jeffrey Marc Sherman. He had been suspended from the practice of law in Virginia several times and was ultimately disbarred on October 7, 2020. He may have been licensed to practice law in Virginia, but not in South Carolina or before this court, at times relevant to the bankruptcy cases at issue here.

3

Kalyn Shoop, a non-attorney, told Ms. Driggers that Babbs Law received her bank statements and the paralegals would start filing her petition. Joint Statement at ¶ 58. On May 5, 2020, Gabriela Lopez, a non-attorney, told Ms. Driggers that paralegals were actively working on her petition, and that once it had been finished it would be sent to in-house counsel. Joint Statement at ¶ 59. On May 18, 2020, Destiny Moore, a non-attorney, told Ms. Driggers that while she was almost ready to be assigned local counsel, her credit counseling certificate was expiring, and that she needed to take the credit counseling course again.[4] Joint Statement at ¶ 61. On May 27, 2020, Destiny Moore told Ms. Driggers that Babbs Law had reached out to local counsel and was awaiting his response. Joint Statement at ¶ 62. On June 1, June 8, June 16, June 22, and June 30, 2020, Ms. Driggers informed Babbs Law that she had not heard from local counsel. Joint Statement at ¶ 63. On June 30, 2020, Deondra Brown sent Ms. Driggers copies of the petition, schedules, and statements to review and sign. Joint Statement at ¶ 65.[5]

The only attorney who reviewed Ms. Driggers' petition was Tallini. Joint Statement at ¶ 55. Tallini first received a copy of Ms. Driggers' petition, schedules, and statements from Babbs Law on January 11, 2020. Joint Statement at ¶ 49. Tallini had questions and suggested revisions to Ms. Driggers' petition, schedules, and statement of financial affairs, but the non-attorney personnel for Babbs Law were mostly unresponsive. Joint Statement at ¶ 50. A final

---

[4] Debtors must receive a credit counseling briefing in the 180 days before filing a petition. *See* 11 U.S.C. § 109(h).
[5] Ms. Driggers was instructed to return the signed documents to Babbs Law at 8801 Sudley Road #1189, Manassas, VA 20108, which is the address for Synergy Law, LLC. Joint Statement at ¶¶ 66, 77. Other documents were also sent to Ms. Driggers indicating that the representation was being handled by Synergy Law, LLC, which created confusion for Ms. Driggers. Those documents were generated and sent to Ms. Driggers a second time by Babbs Law. *See* UST Ex. 17; Babbs Ex. A, p. 8. Several courts, including the United States Bankruptcy Court for the District of South Carolina have found Synergy Law, LLC in violation of the provisions of the bankruptcy code and subject to sanctions. *See In re Shippy*, 605 B.R. 54 (Bankr. D.S.C. 2019); *In re Weathers*, 604 B.R. 13 (Bankr. D.S.C. 2019); *In re Bennett*, No. 18-10346-CB, 2019 WL 4686327 (Bankr. D. Vt. Sept. 25, 2019).

version of the petition, schedules, and statements was sent to Tallini on June 30, 2020, the same date they were sent to Ms. Driggers. Joint Statement at ¶ 64.

Ms. Driggers did not speak to an attorney until her contact with Tallini. Joint Statement at ¶ 37. Ms. Driggers spoke with Tallini for the first time on or about July 9, 2020, according to an entry by a paraprofessional admitted as UST Exhibit 17 and Babbs Exhibit A, p. 18. Ms. Driggers' chapter 13 case was filed on August 13, 2020.

The documents filed in Ms. Driggers' case evidence significant confusion regarding who is representing the debtor. The Disclosure of Compensation filed with the petition in Ms. Driggers' case reflects that Babbs agreed to accept $2,245 for legal services, that Ms. Driggers paid $2,245, and that Babbs was not sharing the fees with anyone who is not a member or associate of his law firm. The Disclosure of Compensation contained the "/s/" signature and email address of Babbs but lists Tallini's name and address below the signature. Babbs Law is not named on the Disclosure of Compensation. Joint Statement at ¶ 14. After the UST filed his Motion, Babbs filed an amended Disclosure of Compensation on November 1, 2020 stating that he agreed to accept $3,700 from Ms. Driggers, and that he had been paid $3,700 prior to the filing of the statement. Joint Statement at ¶ 15.

On part 7 of Ms. Driggers' petition, Babbs signed as the attorney for Ms. Driggers. The firm name is shown as "Richard Tallini, Esq." and Tallini's address in Texas is listed as the attorney's address, but the email listed for the attorney is sam@babbslaw.com. Joint Statement at ¶ 9. Babbs is not licensed to practice law in South Carolina and has not been admitted *pro hac vice* in Ms. Driggers' case. Joint Statement at ¶ 11. However, Babbs Law corresponded with Ms. Driggers post-petition and documents in her bankruptcy case. *See* UST Ex. 17; Babbs Ex. A, p. 36.

5

On September 12, 2020, Tallini filed a certificate of service reflecting service of Ms. Driggers' chapter 13 plan; however, the mailing matrix attached to the certificate of service is for a different case pending in the Middle District of Florida, in which Babbs is the attorney of record. A corrected matrix was filed on September 15, 2020. *See* UST Exs. 10 and 11; Joint Statement at ¶ 18.

**The Marks Case**

Ms. Marks experienced many of the same problems that occurred in Ms. Driggers' case. On April 9, 2020, Ms. Marks signed a retention agreement with Babbs Law, which shows she will pay $2,245 in legal fees. *See* UST Ex. 5. According to item 16 of the Statement of Financial Affairs, Ms. Marks paid Babbs Law $2,195 prior to the signing of the retention agreement, on February 10, 2020. Joint Statement at ¶ 21. On April 22, 2020, Ms. Marks requested that Babbs Laws provide her with information on the local attorney assigned to her, and Shirley Moya, a non-attorney representative of Babbs Law, told Ms. Marks she instead could give creditors Babbs Law's information and have them contact Babbs Law. Joint Statement at ¶ 42. On June 10, 2020, Destiny Moore told Ms. Marks that her petition had been sent to in-house counsel to review. Joint Statement at ¶ 44. On July 3, 2020, Deondra Brown, a non-attorney representative of Babbs Law, sent Ms. Marks her petition to review and sign. Tallini was sent Ms. Marks' petition to review one minute before it was sent to Ms. Marks. Joint Statement at ¶¶ 45 and 46. On August 4, 2020, Destiny Moore, in response to another inquiry about the identity of local counsel, told Ms. Marks that she would find out. Joint Statement at ¶ 43.

Ms. Marks' petition for relief pursuant to chapter 7 of the United States Bankruptcy Code was filed on August 13, 2020. Ms. Marks did not speak with an attorney until she spoke with Tallini shortly prior to the petition date. Joint Statement at ¶¶ 38, 40. Tallini's Disclosure

6

of Compensation filed in Ms. Marks' case shows he was paid $440 by Babbs Law.  *See* UST Ex. 7.  Neither Babbs Law nor Babbs filed a Disclosure of Compensation in Ms. Marks' case. Joint Statement at ¶ 23.

**The Business Model**

UST's Exhibit 3 is an e-mail solicitation from Terrylle Blackstone to a local bankruptcy attorney in the District of South Carolina.  In the e-mail, Mr. Blackstone is soliciting local counsel to assist Babbs Law in bankruptcy cases.  It provides that "local counsel receives a portion of what the client pays Babbs Law for the bankruptcy case, reflecting the (hopefully) limited range of services that local counsel may be asked to perform."  It also states that Babbs Law "is set-up to do most of the heavy lifting for the clients", and that "Babbs [Law] will always be primarily responsible for the client."  The solicitation e-mail also provides that "the fees paid would be proportionate to the work done by the Babbs Firm and yours so neither firm runs afoul of fee-splitting or sharing limits."  *See* UST Ex. 3.  Mr. Blackstone's email address on the solicitation email is shown as @babbslawbk.com.  *See* UST Ex. 3. However, Terrylle Blackstone is actually employed by Themis Law and was previously employed by Synergy Law.  Joint Statement at ¶¶ 79 and 80.

Tallini's counsel agreement with Babbs Law is dated December 4, 2019.  Tallini was retained as local and co-counsel on a part-time independent contractor basis.  Babbs Law is the lead counsel.  Tallini's compensation is set forth on Schedule A of the agreement and states that of counsel's pre-petition fees are paid out at 22% of what is collected.  *See* UST Ex. 1, pp. 1 and 6.

The retention agreements signed by both Ms. Driggers and Ms. Marks are identical and contain the following language:

7

> **PLEASE NOTE:** The Firm may use a part of the Flat Fee to pay for the services of an attorney to serve as co-counsel (or "local counsel") in the jurisdiction where the Client's case is to be filed. **The payment to the Local Counsel will NOT increase the amount of the fee paid by the Client;** it represents the amount of the fee passed on by the Client to the Firm which the Firm then passed on to the Local Counsel as compensation for services actually rendered by Local Counsel in service of the Client. **No portion of the Flat Fee paid by the Client is being paid or shared except in proportion to the work being done by and through each of the Firm and the Local counsel;** no "referral fee" or other monetary award, fee, stipend, or other form of payment is being paid or made by either the Firm or the Local Counsel or between them, **except for a proportional division based on actual legal services and expenses incurred on behalf of the Client.** By signing this Agreement, the Client expressly states that *the Client consents to this arrangement as between the Firm and Local Counsel*, and acknowledges that **full disclosure of the establishment, existence and performance of this relationship has been made and given to the Client by the Firm** as part of the process of retaining the Firm hereunder.

In these cases, the debtors were not provided with the identity or contact information for local counsel at the time they entered into the retention agreements with Babbs Law. Additionally, although the debtors were advised by the language in the retention agreements that Babbs Law might in fact retain local counsel and share a portion of the fees paid by the debtors with local counsel, the debtors were not informed how much local counsel would be paid.

## ARGUMENTS OF THE PARTIES

The UST asserts that Tallini, Babbs, and Babbs Law are debt relief agencies under the bankruptcy code's definition and are violating the requirements of 11 U.S.C. §§ 526 and 528. The UST asserts that the disclosures of compensation made by Tallini, Babbs, and Babbs Law are inadequate and that the fees paid to Babbs and/or Babbs Law are excessive under § 329. Finally, the UST argues that the arrangement between Tallini, Babbs, and Babbs Law and the actions of the paralegals in these cases without attorney supervision constitute the unauthorized practice of law and that the Court should use its § 105 powers to fashion a remedy for this improper conduct.

Babbs and Babbs Law reply that the fee-sharing arrangement between Tallini, Babbs, and Babbs Law is proper. They also assert that the division of labor between the attorneys Tallini and Babbs is appropriate. Finally, they assert that Tallini is a contractor of Babbs Law Firm and therefore does not need to have a separate retainer agreement with the debtor—it is proper for the retainer agreement to be between Babbs Law and the debtor, who expressly consented to the employment of local counsel.

## ANALYSIS

### I.    11 U.S.C. § 526

11 U.S.C. § 101(12A) defines a "debt relief agency" as "any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration, or who is a bankruptcy petition preparer under section 110." It also contains certain exclusions, not applicable here. "Bankruptcy assistance" is defined as:

> any goods or services sold or otherwise provided to an assisted person with the express or implied purpose of providing information, advice, counsel, document preparation, or filing, or attendance at a creditors' meeting or appearing in a case or proceeding on behalf of another or providing legal representation with respect to a case or proceeding under this title.

11 U.S.C. § 101(4A). An "assisted person" is "any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $204,425." 11 U.S.C. § 101(3). It is undisputed that the debtors Driggers and Marks are assisted persons under this definition, and the assistance provided to them by Tallini, Babbs, and Babbs Law was bankruptcy assistance as defined in § 101(4A). Tallini, Babbs, and Babbs Law provided bankruptcy assistance to assisted persons, were paid for their services, and as a result, meet the definition of "debt relief agency" under § 101(12A). Joint Statement at ¶ 7. Tallini's relationship with Babbs Law, contract or otherwise, does not change this.

9

> 11 U.S.C. § 526 provides:
>
> (a) A debt relief agency shall not--
> (1) fail to perform any service that such agency informed an assisted person or prospective assisted person it would provide in connection with a case or proceeding under this title;
> (2) make any statement, or counsel or advise any assisted person or prospective assisted person to make a statement in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading;
> (3) misrepresent to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to--
> (A) the services that such agency will provide to such person; or
> (B) the benefits and risks that may result if such person becomes a debtor in a case under this title; or
> (4) advise an assisted person or prospective assisted person to incur more debt in contemplation of such person filing a case under this title or to pay an attorney or bankruptcy petition preparer a fee or charge for services performed as part of preparing for or representing a debtor in a case under this title.

Babbs and Babbs Law violated § 526(a)(2) and (3) by stating in the retention agreements with the debtors that they would provide services to the debtors in connection with their bankruptcy cases filed in South Carolina. Specifically, the agreements provided that the representation included the following services, among others: "preparation of all the documents regularly necessary to initiate and complete Chapter 7/13 bankruptcy case in accordance with the applicable Bankruptcy Rules and Bankruptcy Code; . . . [and] our attendance with you, and our participation in, a face-to-face meeting that is held in every bankruptcy case with the Chapter 7/13 trustee, and any follow-up work that may be required as a result of that meeting." UST Ex. 4, pp. 2-3. The agreements provide that the services also include communications with creditors and communication with the chapter 7/13 trustee regarding the administration of the case. However, Babbs is not licensed to practice law in South Carolina. No lawyer with Babbs Law is admitted to practice law in South Carolina or before this Court. Therefore, neither Babbs Law nor Babbs may file documents on behalf of the debtors, attend the meeting of creditors on behalf

10

of the debtors, or appear in court on behalf of the debtors. The agreements also detail the compensation to be paid to Babbs Law. While they contain a notice that Babbs Law may retain local counsel and use a portion of the fees paid to Babbs Law to pay local counsel for their services, they do not explain the anticipated division of services between Babbs Law and local counsel, or the division of fees, and do not identify who local counsel will be. Thus, the retention agreements violate § 526's requirements.

>Section 526(c) provides the remedies for a violation of its requirements, stating:

>(c)(1) Any contract for bankruptcy assistance between a debt relief agency and an assisted person that does not comply with the material requirements of this section, section 527, or section 528 shall be void and may not be enforced by any Federal or State court or by any other person, other than such assisted person.
>(2) Any debt relief agency shall be liable to an assisted person in the amount of any fees or charges in connection with providing bankruptcy assistance to such person that such debt relief agency has received, for actual damages, and for reasonable attorneys' fees and costs if such agency is found, after notice and a hearing, to have—
>(A) intentionally or negligently failed to comply with any provision of this section, section 527, or section 528 with respect to a case or proceeding under this title for such assisted person;
>(B) provided bankruptcy assistance to an assisted person in a case or proceeding under this title that is dismissed or converted to a case under another chapter of this title because of such agency's intentional or negligent failure to file any required document including those specified in section 521; or
>(C) intentionally or negligently disregarded the material requirements of this title or the Federal Rules of Bankruptcy Procedure applicable to such agency.

>. . .

>**(5)** Notwithstanding any other provision of Federal law and in addition to any other remedy provided under Federal or State law, if the court, on its own motion or on the motion of the United States trustee or the debtor, finds that a person intentionally violated this section, or engaged in a clear and consistent pattern or practice of violating this section, the court may—
>**(A)** enjoin the violation of such section; or
>**(B)** impose an appropriate civil penalty against such person.

Thus, it appears that the appropriate remedies for Babbs and Babbs Law's violations of § 526 include cancellation of the retention agreements between Babbs Law and the debtors, return by

Babbs Law of all fees paid by the debtors to Babbs Law, including any fees paid by Babbs Law to Tallini, and an injunction prohibiting Babbs Law from entering into any agreements for representations of debtors in South Carolina, until further order of the Court.

## II.     11 U.S.C. § 528

11 U.S.C. § 528 states, in relevant part:

(a) A debt relief agency shall--
(1) not later than 5 business days after the first date on which such agency provides any bankruptcy assistance services to an assisted person, but prior to such assisted person's petition under this title being filed, execute a written contract with such assisted person that explains clearly and conspicuously—
(A) the services such agency will provide to such assisted person; and
(B) the fees or charges for such services, and the terms of payment;
(2) provide the assisted person with a copy of the fully executed and completed contract;
(3) clearly and conspicuously disclose in any advertisement of bankruptcy assistance services or of the benefits of bankruptcy directed to the general public (whether in general media, seminars or specific mailings, telephonic or electronic messages, or otherwise) that the services or benefits are with respect to bankruptcy relief under this title; and
(4) clearly and conspicuously use the following statement in such advertisement: "We are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy Code." or a substantially similar statement.

Babbs Law's retention agreements with the debtors contain a description of the services to be provided and also set forth the amount of fees the debtors are to pay to Babbs Law for the representation. However, with respect to the retention of local counsel, the agreement simply states that Babbs Law may retain such counsel and may use a portion of the fees paid to it by the debtor to pay local counsel. It does not indicate who local counsel is, what services local counsel will provide, or how much local counsel will be paid.

Judge Waites recently considered a similar arrangement between two attorneys in *Defeo v. Radius Global Solutions, LLC*, Adv. Nos. 20-80090-JW and 21-80011-JW, C/A No. 20-03738-JW (Mar. 25, 2021). In *Defeo*, the attorney who represented the debtor in his chapter 13

12

bankruptcy case filed a disclosure of compensation indicating that he was being paid $4,000.00 for all aspects of the bankruptcy case, including "Representation of the debtor in adversary proceedings and other contested bankruptcy matters." The disclosure also indicated that the attorney had agreed not to share the compensation with anyone. However, the attorney subsequently entered into separate representation agreements with the debtor regarding services to be performed in two adversary proceedings. These subsequent agreements gave the attorney permission to associate co-counsel and stated that the debtor "agrees to pay said co-counsel's applicable hourly rate for all co-counsel attorney time and also pay for any litigation costs that said co-counsel incurs." The attorney then entered into a co-counsel representation agreement with another attorney, which indicated that the co-counsel would provide services in both adversary proceedings. The other attorney had no separate agreement with the debtor.

Judge Waites considered whether this arrangement between the attorney and co-counsel satisfied the requirements of § 528. Judge Waites noted that the debtor was not a party to the co-counsel agreement and that it was not clear whether the debtor was aware of the services and fees to be charged by the co-counsel. Judge Waites stated that arrangements in which the co-counsel only has a contractual relationship with the attorney retained by the debtor "appear to circumvent the purpose and protections provided under § 528 by skirting the requirement for a debt relief agency to obtain a written contract with the assisted person when providing bankruptcy services to that person." *Id.* at 9. Judge Waites also stated that the provision in the attorney's agreement with the debtor providing that the attorney could choose to retain co-counsel to assist was not sufficient to waive the written agreement requirement under § 528(a)(1), because § 526(b) provides that no such waiver is enforceable. Judge Waites stated, "Therefore, as a practical matter, a debt relief agency cannot contract out of the requirements

13

under §§ 526, 527, and 528 with the assisted person/debtor as the debt relief agency will remain liable for any damages resulting from the noncompliance and/or have the contract voided pursuant to the provisions of § 526(c)." *Id.* at 9-10.

In this case, the agreements between Babbs Law and the debtors run afoul of the requirements of § 528. As a result the Court finds the agreements void under § 526(c) and orders the return of all fees paid by the debtors to Babbs Law.

### III. 11 U.S.C. § 329

Section 329 provides:

> (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
> (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to--
> (1) the estate, if the property transferred--
> (A) would have been property of the estate; or
> (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
> (2) the entity that made such payment.

In the Driggers case, the original disclosure of compensation indicated that the attorney received $2,245 in compensation for the case and contained the signature of Babbs. Amended disclosures of compensation were filed on November 1, 2020 for both Babbs and Tallini. Babbs' amended disclosure states that he received $3,700.00 for services rendered. The disclosure indicates that the services provided were legal service for all aspects of the bankruptcy case, including:

   a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
   b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;

14

    c.  Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
    d.  [Other provisions as needed].

Tallini's amended disclosure indicates that he received $814.00 for legal services and that the funds were paid to him by Babbs Law. The description of the services provided is identical to the statement of services listed in Babbs' amended disclosure.

In the Marks case, the disclosure of compensation filed with the debtor's schedules at the commencement of the case indicated that Mr. Tallini received $440.00 for services rendered in the case and that the source of the compensation was Babbs Law. The statement of legal services rendered is identical to the statement in the Driggers case. No disclosure of compensation has been filed in the Marks case regarding compensation paid to Babbs or Babbs Law.

In the Driggers case, the original disclosure of compensation contained an incorrect amount of compensation for Babbs and did not disclose that any funds were paid to Tallini. In addition, the amended disclosures filed by both Babbs and Tallini in the Driggers case contain identical descriptions of services performed. However, Babbs was unable to perform many of these services as he is not admitted to practice in South Carolina. In the Marks case, Babbs never filed a disclosure of compensation—the only disclosure was for Tallini, which indicated that he received compensation from Babbs Law. All of the disclosures filed in both cases have a box checked next to the statement, "I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm." The compensation received by Tallini, Babbs, and Babbs Law in each of the debtors' cases and the statement of services are not adequately disclosed as required by § 329.

15

Additionally, the compensation received by Babbs and/or Babbs Law exceeds the reasonable value of the services provided. As set forth above, in both the Driggers and Marks cases, there were significant, unwarranted delays between the debtors' retention of Babbs Law and the filing of the bankruptcy cases. Both debtors corresponded with non-attorney employees or representatives of Babbs Law numerous times, often inquiring as to when their cases would be filed, before the filings were completed. Additionally, as discussed below, neither Babbs nor any other attorney supervised the non-attorneys working on the debtors' cases. To the extent Tallini attempted to direct the non-attorneys, he was largely ignored. Ultimately, Babbs was unable to provide the services identified in his disclosure of compensation filed in the Driggers case because he is not licensed to practice law in South Carolina or before this Court. For these reasons the agreements with the debtors and Babbs or Babbs Law are cancelled, and Babbs is ordered to return all fees paid by the debtors to Babbs and/or Babbs Law, without reduction for any funds paid by Babbs Law to Tallini.

### IV.     Unauthorized Practice of Law and 11 U.S.C. § 707

As detailed above, in both of the debtors' cases, the debtors repeatedly spoke with non-attorney employees or representatives of Babbs Law in connection with the preparation of their bankruptcy cases for filing. These non-attorneys prepared the documents necessary for filing the debtors' bankruptcy cases and also gave legal advice, at least in the Driggers case. For example, in the Driggers case, the debtor was advised that the bankruptcy filing would stop a foreclosure and was further advised that her husband would be protected by the 11 U.S.C. § 1301 co-debtor stay. The work done by the non-attorneys was not supervised by Babbs, nor could it have been as he is not admitted to practice law before this Court. In both cases, an attorney did not review the petitions, schedules, and statements prior to the documents being sent to the debtors to sign.

16

In the Driggers case, the documents were sent to Tallini on the same day they were sent to the debtor. In the Marks case, they were sent to Tallini one minute prior to being sent to the debtor. Neither debtor spoke with an attorney before speaking to Tallini shortly prior to the filing of their petitions. The in-house counsel likewise was not admitted to practice law in South Carolina nor before this Court and perhaps was not admitted in any jurisdiction. The non-attorneys at Babbs Law were performing the work of obtaining all information from the debtors, preparing their petitions and schedules and statements, and corresponding with the debtors, without attorney supervision. These actions constitute the unauthorized practice of law. *See In re Weathers*, 604 B.R. at 20-21 ("Advising a debtor regarding which documents to file with the court and/or the completion of the bankruptcy petition, schedules and other pleadings constitutes the practice of law."); *In re Ward*, No. 20-03311-HB, 2021 WL 1940743, at *5 (Bankr. D.S.C. May 13, 2021) ("It is well-established that the solicitation of financial information and preparation of bankruptcy petitions and schedules constitutes rendering legal advice. Therefore, if performed by a person not properly licensed, it may be considered the unauthorized practice of law."). Babbs and Babbs Law also engaged in the unauthorized practice of law by providing services to the debtors in connection with their South Carolina bankruptcy cases, despite the fact that Babbs is not licensed in South Carolina.[6]

Finally Babbs' and Babbs Law's failure, through counsel admitted before this Court, to supervise the solicitation of financial information from Ms. Marks and preparation of the petition and schedules and statements and the failure to communicate with Ms. Marks regarding her

---

[6] Babbs recently entered into two Stipulated Consent Orders with the United States Trustee for Region 12 in a case pending in the United States Bankruptcy Court for the Northern District of Iowa. *In re Bastman*, Case No. 20-00439-C and is aware of the problems with this practice arrangement.

17

bankruptcy filing constitutes a violation of § 707(b).  Section 707(b)(4) provides, in relevant part:

> (C) The signature of an attorney on a petition, pleading, or written motion shall constitute a certification that the attorney has—
> (i) performed a reasonable investigation into the circumstances that gave rise to the petition, pleading, or written motion; and
> (ii) determined that the petition, pleading, or written motion—
> (I) is well grounded in fact; and
> (II) is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and does not constitute an abuse under paragraph (1).
> (D) The signature of an attorney on the petition shall constitute a certification that the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect.

This Court has recently stated, "§ 707(b) requires an attorney to, pre-petition, review and make an inquiry into the debtor's financial affairs to ensure that the petition and schedules are accurate and correct."  *In re Prophet*, C/A No. 20-03131-dd, p. 11 (Bankr. D.S.C. Mar. 29, 2021).  The Court cited an opinion from the United States Bankruptcy Court for the Eastern District of New York, in which the court stated:

> Courts have found an attorney's obligation to perform a reasonable investigation under §§ 707(b)(4)(C) and (D) to be equivalent to the duty under Bankruptcy Rule 9011 to make a reasonable inquiry as to the circumstances giving rise to the bankruptcy petition and all the facts asserted therein.
>
> "A reasonable investigation by counsel and the accompanying certification are essential to the administration of the bankruptcy case because the court, the trustee, and creditors are dependent upon debtors and their counsel providing accurate and complete information in the petition and schedules ... The need for accurate and complete information is so critical that the failure to conduct a reasonable investigation or inquiry as to the information contained in the petition and schedules may subject the certifying attorney to not only attorneys' fees and costs, but also sanctions."
>
> The duty of reasonable inquiry imposed upon an attorney by Rule 9011
>
> requires the attorney (1) to explain the requirement of full, complete, accurate, and honest disclosure of all information required of a debtor; (2) to ask probing and pertinent questions designed to elicit full, complete, accurate, and honest disclosure

Case 20-03239-dd    Doc 79    Filed 05/25/21    Entered 05/25/21 16:07:45    Desc Main
Document      Page 19 of 20

> of all information required of a debtor; (3) to check debtor's responses in the petition and schedules to assure they are internally and externally consistent; (4) to demand of debtor full, complete, accurate, and honest disclosure of all information required before the attorney signs and files the petition; and (5) to seek relief from the court in the event that the attorney learns that he or she may have been misled by a debtor.

*In re Beinhauer*, 570 B.R. 128, 136 (Bankr. E.D.N.Y. 2017) (internal citations omitted). Although Babbs Law, purporting to act as bankruptcy counsel, prepared the petition, schedules, and statements and sent them to Ms. Marks and Tallini, the documents were prepared entirely by paralegals, without attorney supervision. Thus, Babbs did not conduct the proper pre-petition investigation required of an attorney representing a debtor in a bankruptcy case. This failure constitutes a violation of § 707(b).

Babbs' violated § 707(b) and facilitated the unauthorized practice of law in connection with the Marks case. The Court cancels the retention agreements with the debtors and orders the return of all fees paid by the debtors to Babbs and/or Babbs Law. Further an injunction of continued unauthorized practice of law is necessary and proper.

## **CONCLUSION**

For the reasons set forth above, the retention agreements between Babbs or Babbs Law and the debtors do not comply with the bankruptcy code and are therefore void and cancelled. The compensation paid to Babbs and/or Babbs Law exceeds the reasonable value of the services performed. All fees paid to Babbs and/or Babbs Law by the debtors, without reduction for fees that Babbs Law paid to Tallini, must be returned by Babbs or Babbs Law to the debtors within ten (10) days. Babbs and Babbs Law are enjoined from soliciting for filing or filing any bankruptcy cases in the District of South Carolina, including cases in which Babbs or Babbs Law has associated local counsel to perform services. The extension of the injunction to cases in which local counsel, even if admitted to practice law in South Carolina or before this Court, is

proper given the abuses in these cases. This injunction shall remain in effect until proper application by Babbs or Babbs Law, a hearing, and a showing that Babbs or a member of Babbs Law is admitted to practice before this Court.

   AND IT IS SO ORDERED.

**FILED BY THE COURT**
**05/25/2021**



Entered: 05/25/2021

David R. Duncan
US Bankruptcy Judge
District of South Carolina